**FARMERS COOPERATIVE ASSOCIATION Mt. View, Oklahoma, and Farmers Elevator Mutual Insurance Company, Petitioners,**

v.

**Thomas J. MADDEN and The State Industrial Court of Oklahoma, Respondents.**

**No. 38927.**

Supreme Court of Oklahoma.

Oct. 18, 1960.

Rehearing Denied Nov. 22, 1960.

Cheek, Cheek & Cheek, Oklahoma City, for petitioners.

George W. Martin, Jr., Mt. View, and Mac Q. Williamson, Atty. Gen., for respondent.

BLACKBIRD, Justice.

Employer challenges, as unsupported by competent evidence, the finding of the trial tribunal that claimant's disabling condition of the heart resulted from an accidental personal injury within the meaning of the Workmen's Compensation Act, 85 O.S. 1951 § 1 et seq. Under the law, we are urged, the matter submitted for our consideration must be treated as jurisdictional in nature and this court will therefore examine the entire record to make its independent determination of the issue. The authorities cited in support of this argument are clearly inapposite. They announce the rule which governs on review of such well recognized jurisdictional prerequisites as the existence of an employer-employee relationship or the absence of an intervening bar of statutory limitation. Whether a workman engaged in hazardous employment did actually sustain the accidental injury to which his disability is sought to be attributed, presents a question of fact to be resolved by the State Industrial Court. Its finding on such issue will not be disturbed on review when reasonably supported by competent evidence. See Young v. Neely, Okl., 353 P.2d 111, and the cases cited therein.

While lifting and re-stacking somewhere between 25 and 50 boxes of baling wire (weighing approximately 100 pounds each) during the afternoon of April 2, 1959, claimant, a laborer 61 years of age suddenly experienced a severe pain in his chest. Although he was about half finished with stacking these boxes when these pains commenced hurting in his chest, after resting, he finished the stacking. In this connection he testified:

"A. * * * I stacked them up this high, up to about my chin.

"A. Well, I was raising up so high, as heavy as it was, I could tell it was getting the best of me—of course I sat down and rested awhile.

"Q. What do you mean, 'getting the best of you?' A. Pains commenced hurting in my chest.

\* \* \* \* \* \*

"Q. Was this an acute pain? A. So severe I couldn't take it hardly. \* \* \*."

When the pain persisted for some three days following its initial onset, claimant became unable to work. He sought treatment from a local physician who referred him (on April 6, 1959) to Dr. C, a heart specialist. In his deposition which was introduced in evidence, Dr. C related that claimant sustained a severe injury to the heart with a minimum of at least two successive episodes. The condition so found was diagnosed by him as "an acute myocardial infarction", and its cause attributed to the strain of heavy lifting. There was no indication of a pre-existing chronic heart disease.

It is argued that there is no evidence of any physical activity which was unusual or unaccustomed to the claimant, and the finding of an accidental injury is erroneous and contrary to law. On re-direct examination claimant's doctor, Dr. C, testified as follows:

"Q. Now counsel for the company has asked you about the lifting of the object depends considerably, does it not, as far as straining of the body is concerned, and depends upon the type of object, the manner in which he had to lift or stack the objects, and the position the *parties* body was in? A. That's correct. And also, would depend upon the interpretation of how often he had done it. If he had done it regularly every day, that would be different than once a day.

\* \* \* \* \* \*

"Q. Taking this man's history, and the fact that he was lifting this one hundred pound weight of baling wire, do you think that would precipitate the patient's attack? A. If he actually lifted them, I feel it would certainly

have. a relationship. I haven't any proof at all that he lifted them.

"Q. But from this case history, it shows that he was lifting them? A. Yes, sir.

"Q. From the case history you feel that this precipitated or aggravated this condition? A. Yes, sir, he has never indicated anything else.

"Q. From your examination, Doctor, in the hospital, did this myocardial infarction indicate that he had ever had any prior heart condition? A. No, sir, I didn't find any evidence."

◼ Disability attributable to a condition of the heart is compensable if caused by antecedent strain arising out of and in the course of hazardous employment covered by the Workmen's Compensation Act. Young v. Neely, supra; Reints v. Diehl, Okl., 303 P.2d 641. If the injury, or heart attack, happens under circumstances of an unusual and unaccustomed effort of labor, such surrounding condition, when shown, serves to supply supporting proof as to the occurrence of a heart attack. The testimony of Dr. C, quoted above, is to the effect that the strain on the body from lifting heavy objects depends upon the type of the object, the manner in which the object has to be lifted, and the position of the body at the time of the lifting. Whether exertion from a particular physical effort engaged in by the injured workman was sufficient in degree to produce, and did in fact produce, the strain which culminated in his disability, does not present a question of law, but one of fact to be determined by the trial tribunal from expert medical opinion based on relevant facts and circumstances adduced by the proof. Evidential steps necessary to show the factum of an accidental injury from strain are: (a) lay testimony as to the nature of labor performed by the workman when injured; (b) expert opinion that the exertion attendant upon such physical activity as shown was sufficient in degree to, and did produce, the strain which resulted in the workman's disability. Once these elements of proof are supplied, it is then immaterial that disabil-

ity precipitated by the strain manifested itself fully at a time subsequent to the occurrence of the injury. Young v. Neely, supra; Bill Morris Tank Co. v. Martin, Okl., 349 P.2d 15; Phillips Pipe Line Co. v. Brown, Okl., 301 P.2d 689; Reints v. Diehl, supra; Calhoun Construction Co. v. Sexton, Okl., 288 P.2d 705; Acme Material Co. v. Wheeler, Okl., 278 P.2d 234; Liberty Glass Co. v. Guinn, Okl., 265 P.2d 493; State Highway Dept. v. Powell, Okl., 258 P.2d 1189; Choctaw County v. Bateman, 208 Okl. 16, 252 P.2d 465.

◼ We cannot agree that the medical evidence is self-contradictory and too indefinite to support the finding of an accidental injury from a strain to the heart.

Presented in a somewhat disjointed fashion, the deposition of Dr. C did not contain a single hypothetical question incorporating all the relevant and material facts of the case. However, the record, viewed in its entirety, reveals that the physician was familiar with, and assumed substantially all, the salient facts as adduced by the proof. On cross-examination, counsel had ample opportunity to, and did, inquire of the doctor regarding additional aspects and circumstances of the case which were deemed favorable to the employer. Dr. C's testimony clearly shows that he was of the opinion that the lifting of the heavy boxes of wire definitely had a "relationship" to claimant's heart condition, and that the lifting of the boxes precipitated or aggravated claimant's heart attack. There is no expert proof in the record to support employer's suggested theory that the condition resulted from spontaneous "natural body processes."

Although Dr. C repeatedly emphasized that, without appreciable reliance on the patient's history, he could not have reached, from a medical examination alone, any specific conclusion as to the etiology of myocardial infarction, we fail to find any evidentiary basis for the contention of the employer that the physician had, in effect, adopted and substituted claimant's opinion as to causation for that of his own. To the contrary, the witness viewed his independ-

ent physical findings as entirely compatible with his expressed conclusion attributing the injury to a minimum of two closely succeeding "exertion episodes". Neither did the doctor indicate an intention to change, negative, or depart from this opinion.

The manifest purpose of Dr. C's repeated statements as to the necessity of assuming the correctness of claimant's history, as related in order to arrive at his opinion, was merely to explain, rather than to contradict, the process of scientific reasoning which influenced his medical evaluation. The probative force of his testimony remains unimpaired.

Employer invokes the rule that an award based solely on indefinite, equivocal, ambiguous or inconsistent medical opinion as to the cause of disability, does not rest on competent evidence. Adams v. Reed Roller Bit Co., Okl., 335 P.2d 1081. Ada Coca-Cola Bottling Co. v. State Industrial Comm., Okl., 341 P.2d 568. In the former case, the *physical findings* of the physician were patently inconsistent with his conclusion and, in the latter, a doctor gave two irreconcilable views predicated on the same physical findings. There is no analogy here to the situation in the cited cases; and our opinion is that in this case there is competent evidence reasonably tending to support the trial court's finding that claimant sustained an accidental injury to his heart as a result of strain from lifting.

It is next argued that the cause was prematurely decided and the award entered without proper notice to the employer.

At the conclusion of the hearing the trial judge advised the parties that the case would stand submitted when the deposition of Dr. C was filed. There is no indication that there was to be any further hearing in the matter. Subsequent to the entry of the award the employer made no attempt, either before the trial judge or the State Indus-

trial Court en banc, to have the case reopened or remanded for the purpose of presenting additional evidence or to interpose objections to certain portions of Dr. C's deposition.

When a decision of the trial judge is deemed to have been prematurely entered, the party aggrieved thereby must, by an appropriate application to the trial judge or to the State Industrial Court en banc, offer to present further testimony, show the nature and materiality thereof and state the reason why the same was not or could not be produced at the prior hearing, or such party must, in a like manner, proceed to exclude that evidence previously admitted which is thought objectionable. In the absence of a showing, as outlined, the Supreme Court will not consider whether the alleged premature entry of an award constituted an abuse of discretion.

We may neither assume a violation of procedure nor set a time limit upon the right of the State Industrial Court to determine an issue. Unless there is a plain violation or evasion of some mandatory duty under the statutes, a decision of the trial tribunal will not be disturbed on review. Wadley v. American Window Glass Co., Okl., 341 P.2d 564; Parker v. Williams, Okl., 332 P.2d 19; Peden v. American Iron & Machine Co., Okl., 293 P.2d 585; Berna v. Maloney-Crawford Tank Co., Okl., 281 P.2d 736; Blair v. Federal Insulation Co., Okl., 277 P.2d 687.

We find no violation or evasion in this cause. The record discloses no substantial failure to afford the employer a full and complete hearing on the issues raised in the proceeding. Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.